
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERNON MONTGOMERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-001 (MN) |
| | ) |
| MANDY ONUOHA, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Vernon Montgomery, James T. Vaughn Correctional Center, Smyrna, Delaware.   Pro Se Plaintiff.

Robert B. Young, Esquire, REGER RIZZO & DARNALL, Dover, Delaware, Delaware.   Counsel for Defendant Mandy Onuoha.

Stephen M. Ferguson, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware.   Counsel for Defendant Jacob Payton.

August 12, 2020
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

Plaintiff Vernon Montgomery ("Plaintiff"), who appears *pro se* and was granted permission to proceed *in forma pauperis*, is an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. He filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). The operative pleading consists of the original Complaint and its amendments. (D.I. 3, 7, 8). Before the Court are Defendants' motions to dismiss and/or to conduct an evidentiary hearing on the issue of exhaustion and Plaintiff's motion to hold Defendants in contempt for misrepresentation. (D.I. 27, 28, 40).

## I.   BACKGROUND

The operative pleading raises excessive force and/or failure to protect or intervene claims under the Eighth and/or Fourteenth Amendments, the alleged incident having occurred on November 29, 2018. (D.I. 3, 7, 8). Plaintiff alleges that at the time of the incident he was a pretrial detainee. (D.I. 8). On the form complaint, Plaintiff checked "no" in answering the question, "is the grievance process completed." (D.I. 3 at 8; D.I. 7 at 8). He goes on to explain that the grievances he submitted were returned "unprocessed" with the explanation that staff moves are referred to Captain Dotson. (D.I. 3 at 8; D.I. 7 at 8). A service order issued on May 30, 2019. (D.I. 9).

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for an evidentiary hearing on the issue of exhaustion of administrative remedies. (D.I. 27, 28). Plaintiff opposes.

---

[1]   When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## II.     LEGAL STANDARD

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id*. at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element"

of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). In addition, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

**III.     DISCUSSION**

Plaintiff submitted three grievances pertaining to the alleged excessive force and/or failure to protect incident: one on November 29, 2018, one on November 30, 2018, and one on December 3, 2018. (D.I. 29 at 10-12). The November 30, 2018 grievance specifically complains that Plaintiff was sprayed with chemicals by one of the defendants, while the other defendant laughed about it, and the grievance seeks damages for violations of Plaintiff's constitutional rights. (D.I. 29 at 10). All three grievances were assigned the same Grievance No. 430777. (*Id.* at 10-12). The grievances were returned unprocessed on December 3, 2018, under the heading of "Other" and the statement, "All (3) grievances are staff issues. They were forwarded to Capt. Dotson." (D.I. 29 at 9; D.I. 30 at 5). On December 14, 2018, Plaintiff asked for a grievance appeal form with the notation "no informal resolution accepted by grievant!" (D.I. 30 at 5).

A day earlier, on December 13, 2020, Plaintiff had submitted another grievance, No. 432283, to get an answer from Captain Dotson so that he could exhaust his administrative remedies. (D.I. 29 at 3). The grievance was returned unprocessed under the heading "Other" and with an attached paragraph that states, "any issues with staff should be corresponded to Capt. Dotson. In grievance #430777 you were informed that all of these concerns were forwarded to Capt. Dotson. Also any issue in reference to money or finances have to be filed through the court

system. The grievance office does not have anything to do with restitution." (D.I. 30 at 7).

Defendants argue that dismissal is appropriate because in the original Complaint Plaintiff checked "no" in response to the question "Is the grievance process complete." They also argue that Plaintiff commenced this action without affording JTVCC ample opportunity to fully investigate the grievance. Alternatively, Defendants would like an evidentiary hearing or limited discovery to resolve the issue.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires only "proper exhaustion," meaning exhaustion of those administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Exhaustion applies, however, only when administrative remedies are "available." *See Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850 (2016). Administrative remedies are not available when the procedure "operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage

4

of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey v. Pennsylvania Dep't of Corr.*, __ F.3d __, 2020 WL 4432605, at *3 (3d Cir. Aug. 3, 2020) (citing *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies."). "But '[w]hen an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

In seeking dismissal Defendants refer to Plaintiff's "no" answer that administrative remedies were not exhausted, but make no reference to the fact that the grievances were returned as non-grievable. Defendants also argue that Plaintiff did not exhaust because he did not write to the Security Superintendent or the Warden and did not afford JTVCC ample time to complete an investigation because Plaintiff filed the original complaint less than 30 days after the incident occurred.

Here, Plaintiff submitted a grievance, it was returned as non-grievable and then he submitted a second grievance in an effort to appeal the first grievance that was returned as non-grievable, only to be told that he should "correspond with Captain Dotson" and "that all of his concerns were forwarded to Captain Dotson", and that any of Plaintiff's references to money or finances had to be filed in the court system. Defendants' position does not address how Plaintiff was to proceed with a grievance that was returned as non-grievable and that he attempted to appeal even though it was non-grievable, or how he was to exhaust his administrative remedies after being told by the grievance office that Plaintiff's remedy lay with the courts and not the grievance office.

5

Nor do the 2013 or the 2017 Inmate Grievance Procedure Policy No. 4.4 provide guidance.[2] *See e.g.*, D.I. 27-1 at Ex. A at VI.A.4; Ex. B. at VI.3. ("Policies that have their own formal appeal mechanisms are not grievable under this policy."); Ex. A at V.I.B.1.b ("in the event the grievance relates to the conduct of a staff member, the grievance will be rejected and forwarded to the individual's immediate supervisor for investigation."); Ex. B at VI.3a. ("Staff Investigation. To request that the actions of security staff be investigated, inmates submit requests in writing to the area Supervisor/Unit Commander.").[3]

In light of the foregoing, the Court finds that Defendants have not met their burden to prove that Plaintiff failed to exhaust his administrative remedies. The exhibits indicate that Plaintiff's grievances were returned as unprocessed. It is evident that Plaintiff had no available administrative remedies and, therefore, the exhaustion requirement need not be met. Accordingly, Defendants' motions to dismiss will be denied.

## IV. MOTION FOR SANCTIONS

Plaintiff asks the Court to hold the Delaware Department of Justice ("the DOJ") or the Delaware Department of Correction ("the DOC") in contempt and award Plaintiff $1,000 as a whistleblower. (D.I. 40). Plaintiff notes that the Court was advised that Defendant Corporal Mandy Onuoha's employment with the DOC was terminated, and contends this is not true and that Onuoha works in the infirmary at JTVCC.

---

[2] The Court refers to the 2013 policy but finds it inapplicable in light of the more recent 2017 policy and the fact that the incident occurred in 2018.

[3] The section does not address what the process is when the grievance is returned as non-grievable and forwarded on as "staff issues." In addition, this section is inapplicable given that Plaintiff did not request an investigation. Rather, he complained that he was sprayed with chemicals by one correctional officer while the other correctional officer laughed.

On August 7, 2019, the DOJ sought counsel for Onuoha due to a conflict of interest. (D.I. 12). The motion referred to Onuoha's termination of employment from the DOC on February 26, 2019. (*Id*.). Plaintiff alleges misrepresentation by the DOJ or the DOC because Onuoha allegedly is currently employed at JTVCC.

The motion will be denied. The Court was advised of a conflict of interest in granting the DOJ's motion for counsel for Onuoha and was provided documentation that Onuoha's employment had been terminated. The motion was filed one year ago, in August 2019, and it is unknown to the Court if Onuoha has regained employment with the DOC or if he works for a contract medical provider which may be likely because Plaintiff states he saw Onuoha in the infirmary. Regardless, Onuoha was provided counsel due to a conflict of interest and not based upon his employment or termination of employment with the DOC.

## V.    CONCLUSION

For the above reasons, the Court will: (1) deny Defendants' motions to dismiss (D.I. 27, 28); and (2) deny Plaintiff's motion to hold Defendants in contempt (D.I. 40).

An appropriate order will be entered.